This memorandum is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 32
The People &c.,
           Respondent,
        v.
Yusuf Sparks,
           Appellant.

Andrew J. Dalack, for appellant.
Susan Gliner, for respondent.

MEMORANDUM:

The order of the Appellate Division should be affirmed.

Defendant was charged with one count of assault in the first degree (Penal Law § 120.10 [1]) following a dispute at a Manhattan bodega.  Defendant, then age 19, and the victim, a 50-year-old man with a long history of substance abuse and criminal

- 1 -

activity, had a verbal exchange inside the bodega after the victim provoked defendant.  Based on that affront, defendant twice threatened to "murder" the victim, who was in an inebriated, stumbling state, before eventually punching him inside that store.  In defendant's words, the punch "knocked [the victim] out."

The surveillance footage that was admitted into evidence at the jury trial contains images of what happened outside the bodega after defendant punched the victim.  In sum, after defendant struck the victim, defendant and the victim separately left the immediate vicinity of that store on foot.  A few minutes later, the footage reflects that defendant re-entered the bodega; soon thereafter, the victim returned to the area immediately outside that store and stumbled about.  Inside the bodega, defendant asked the shopkeeper for a stick,[1] but the shopkeeper refused that request, saying that the punch was "enough for [the victim]."  Defendant, however, told the shopkeeper that he was going to walk outside and "knock [the victim] out again."

The surveillance footage reflects that defendant did exactly that.  As he walked out of the bodega, defendant struck the unsuspecting victim in the face with a milk crate.  The blow knocked the victim to the sidewalk, and defendant walked away

---

[1]    The surveillance footage also captured audio of defendant's altercations with the victim.

from that store.  The victim, however, was taken by ambulance to a hospital, where he was determined to have a broken nose and cheekbone, and where he received potentially life-saving treatment for a traumatic brain injury.

Following the trial, defendant was convicted of the lesser included offense of assault in the second degree (Penal Law § 120.05 [2]).  On appeal, the Appellate Division affirmed the judgment of conviction (132 AD3d 513 [1st Dept 2015]).  A Judge of this Court granted defendant leave to appeal (26 NY3d 1092 [2015]), and we now affirm the Appellate Division order.

Contrary to defendant's contention, the trial court properly refused to instruct the jury on the defense of justification.  Viewing the record in the light most favorable to defendant, as we must (see People v Watts, 57 NY2d 299, 301 [1982]), we conclude there is no reasonable view of the evidence that would have permitted the factfinder to conclude that defendant's conduct was justified (see People v Cox, 92 NY2d 1002, 1004 [1998]; cf. People v Petty, 7 NY3d 277, 284 [2006]). That is, we agree with the People that there is no evidence that objectively supports a belief that defendant was in danger of being physically harmed by the victim at the time defendant used force against him (see Cox, 92 NY2d at 1005; see also People v Wesley, 76 NY2d 555, 559 [1990]).[2]

---

[2]     To be clear, the

"justification [defense] is comprised of both

Here, after "knocking [the victim] out," defendant was able to freely and safely walk away from the bodega.  Moreover, there simply is no evidence that, once he returned to the bodega, defendant *needed* to leave that store to strike the victim to defend himself.  Even if defendant's trial testimony establishes that he actually believed that the victim was lying in wait for him with a weapon (see generally Wesley, 76 NY2d at 559), there is no reasonable view of the evidence that "a reasonable person in . . . defendant's circumstances would have believed" the victim to have threatened him with the imminent use of unlawful physical force (Umali, 10 NY3d at 425; see Penal Law § 35.15 [1]). Put simply, the surveillance footage reflects that

subjective and objective elements.  The subjective element [in a case such as this one] is concerned with whether the defendant believed that the use of [physical] force was necessary; while under the objective prong, the jury must consider whether a reasonable person in the defendant's circumstances would have believed that [physical] force was required. When a defense of justification is raised, 'the People must prove beyond a reasonable doubt that [the] defendant's conduct was not justified' (People v Craig, 78 NY2d 616, 619 n 1 [1991]).  In other words, the People must demonstrate beyond a reasonable doubt that the defendant did not believe [physical] force was necessary or that a reasonable person in the same situation would not have perceived that [physical] force was necessary (see e.g. People v Goetz, 68 NY2d 96, 115 [1986])" (People v Umali, 10 NY3d 417, 425 [2008]; see Wesley, 76 NY2d at 559).

defendant's ambush of the victim with the milk crate cannot be considered self defense.

We agree with defendant that the trial court erred in adjusting its Sandoval ruling based on defendant's trial testimony (cf. People v Fardan, 82 NY2d 638, 645-647 [1993]).  We further conclude, however, that the error is harmless.  The evidence of defendant's guilt is overwhelming, and there is no significant probability that the outcome of the trial would have been different in the absence of that error (see generally People v Crimmins, 36 NY2d 230, 241-242 [1975]).

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order affirmed, in a memorandum.  Chief Judge DiFiore and Judges Rivera, Abdus-Salaam, Stein, Fahey, Garcia and Wilson concur.

Decided March 30, 2017