(December 28, 2017)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FREDERICK WILLIAMS, Appellant. [69 NYS3d 367]—

Rumsey, J. Appeal from a judgment of the County Court of Columbia County (Koweek, J.), rendered April 2, 2014, (1) upon a verdict convicting defendant of the crimes of burglary in the

second degree and robbery in the third degree, and (2) which revoked defendant's probation and imposed a sentence of imprisonment.

In the early hours of August 2, 2012, defendant, accompanied by four other individuals, drove a white suburban vehicle (hereinafter the SUV) to the home of Desiree Graziano. Defendant parked the vehicle in the driveway of a nearby property and remained in the SUV as the other four individuals broke into Graziano's home while she and three others were present and stole money and drugs. When the police responded, the suspects fled the home and returned to the SUV. Defendant then engaged the police in a short high-speed chase before he drove the SUV off the road where it came to rest in a pond. All five occupants exited the SUV and attempted to flee. Defendant successfully escaped, but was subsequently arrested.

In September 2012, defendant and codefendants Bobby Smith, Miguel Alcarez, Joseph Speed and Jeremy Cobbins were each indicted on one count of burglary in the first degree and one count of robbery in the first degree. Pursuant to defendant's motion, his case was severed from the codefendants' cases. Following a jury trial, defendant was acquitted of the charged crimes but was found guilty of the lesser included offenses of burglary in the second degree and robbery in the third degree. Thereafter, defendant was sentenced as a second felony offender to concurrent prison terms of 12 years, with 10 years of postrelease supervision, for the burglary conviction and 3½ to 7 years for the robbery conviction. The court also revoked defendant's probation stemming from a 2009 felony conviction for burglary in the third degree and resentenced him to a prison term of 2⅓ to 7 years on that conviction, to run concurrently with the sentences imposed upon the new convictions. Defendant appeals.

Defendant initially argues that his convictions were not supported by legally sufficient evidence and that the verdicts were against the weight of the evidence. As defendant concedes, his challenge to the legal sufficiency of the evidence is unpreserved for our review because he made only a general motion for a trial order of dismissal at the close of the People's case and failed to renew that motion after he presented his proof (*see People v Newell*, 148 AD3d 1216, 1220 [2017], *lv denied* 29 NY3d 1035 [2017]). Nonetheless, in conducting our weight of the evidence review, we must evaluate whether all elements of the crimes for which defendant was convicted were proven beyond a reasonable doubt (*see People v Spencer*, 152 AD3d 863, 863-864 [2017], *lv denied* 30 NY3d 983 [2017]). In determining

whether the verdict is supported by the weight of the evidence, where, as here, a different verdict would not have been unreasonable, we must view the evidence in a neutral light and accord deference to the jury's credibility determinations (*see id.*; *People v Cooley*, 149 AD3d 1268, 1269 [2017], *lv denied* 30 NY3d 979 [2017]; *People v Gunn*, 144 AD3d 1193, 1194 [2016], *lv denied* 28 NY3d 1145 [2017]).

Defendant does not claim that the codefendants did not commit burglary or robbery; rather, defendant argues that his conviction was against the weight of the evidence because the only direct evidence that he intended to aid his codefendants in committing the burglary and robbery was the uncorroborated testimony of Speed, an accomplice. A person is liable as an accomplice for the conduct of another person "when, acting with the mental culpability required for the commission thereof, he [or she] solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct" (Penal Law § 20.00). "A defendant may not be convicted solely on the basis of accomplice testimony that lacks the support of corroborative evidence tending to connect the defendant with the commission of the charged offense" (*People v Slaughter*, 150 AD3d 1415, 1416 [2017] [internal quotation marks, brackets and citations omitted]). "The required corroborative evidence need not be powerful in itself, show the commission of the crime or show that [the] defendant was connected with the commission of the crime. It is enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth. [Thus, c]orroborative evidence sufficiently connects the defendant to the crime if, when considered with the accomplice's testimony, it makes it more likely that the defendant committed the offense, and thus tends to connect him or her to it" (*People v Godallah*, 132 AD3d 1146, 1149 [2015] [internal quotation marks, ellipses, brackets and citations omitted]).

Speed testified that, on the night in question, defendant picked him up in the SUV and that, along with Smith, Cobbins and Alcarez, they drove around, drinking, before they decided to buy cocaine from Graziano. Speed further testified that the five occupants of the SUV—including defendant—decided to steal drugs and money from Graziano, based on a suggestion originally made in jest by Alcarez, and to divide any proceeds equally. According to Speed, the plan was for Smith, Cobbins, Alcarez and himself to enter Graziano's house while defendant, who did not want to enter the home, waited in the car and acted as a getaway driver. Speed asserted that the plan did not

involve the use of weapons and that none of them was armed during the conversation. He said that defendant parked the car down a hill from Graziano's house near an adjacent property and that he and the other codefendants donned bandanas and latex gloves in defendant's presence before exiting the SUV. Speed explained that he and the other codefendants broke into Graziano's house and took money and cocaine from various places in the house while they held the four occupants of the house using weapons that they picked up at the scene. According to Speed, when police officers arrived, the four codefendants immediately exited the house and ran to the SUV, where defendant was waiting. Speed said that as defendant drove the SUV away, he heard a gunshot coming from behind the vehicle and later became aware that they were being pursued by a police vehicle. Speed further testified that defendant drove the SUV into a field, where all five occupants jumped out and attempted to flee. Speed admitted that he was apprehended shortly after leaving the vehicle.

Despite his testimony that he did not know of the plan for his codefendants to enter Graziano's residence for the purpose of stealing drugs and money, defendant's own testimony is sufficient to corroborate Speed's testimony. Defendant admitted that, during the night in question, he drove a white SUV he had borrowed from a friend, that he picked up Cobbins, Alcarez, Smith and Speed and that the five of them consumed alcohol at Speed's house. Defendant acknowledged that the codefendants engaged in various conversations as he drove, but claimed that he was not listening because he was mostly on his phone during that time. He said that he drove to Graziano's house because Speed wanted to pick something up from her, but denied that he was aware of, or took any part in, any conversation about breaking into her house or stealing from her. Defendant admitted that he parked nearby, at Speed's instruction, and that the codefendants exited the vehicle together and walked up the hill toward the house, but he denied seeing any of them cover their faces with a mask or bandana or wear gloves. Defendant further testified that he had originally parked the SUV "sideways across the driveway," but subsequently repositioned the vehicle so that it was facing towards the road. Defendant said that after the codefendants exited the vehicle, he reclined his seat and was taking a nap when they suddenly returned, looking panicked and yelling for him to drive away. He said that, as he began to drive, he heard a gunshot. Defendant asserted that he drove the speed limit and, after he became aware that a police vehicle was following him, he pulled over onto a grassy field, at Speed's suggestion, where

he and the codefendants jumped out of the vehicle before it came to a stop and attempted to flee. Defendant acknowledged that he was arrested a few hours later.

Notably, defendant admitted that he provided the vehicle that was used as the getaway vehicle, that he used the vehicle to drive the codefendants to the scene of the crime, where he parked the vehicle—not at the residence but at a nearby secluded location—oriented toward the road for easy exit, that he drove the codefendants from the scene after being fired upon while being pursued by the police and that he fled from the vehicle after he drove it off the road. Such admissions are alone sufficient to corroborate Speed's testimony, notwithstanding defendant's assertion that he knew nothing of the plan to steal from Graziano (*see People v Jackson*, 44 NY2d 935, 937 [1978]; *People v Keitt*, 42 NY2d 926, 927 [1977]; *People v Spencer*, 152 AD3d at 866; *People v Gage*, 259 AD2d 837, 839-840 [1999], *lv denied* 93 NY2d 924 [1999], *lv denied upon reconsideration* 93 NY2d 970 [1999]).

Moreover, numerous details in Speed's testimony were also corroborated by the testimony of additional nonaccomplice witnesses. Graziano testified that she was in her home on the night in question when she heard breaking glass and realized that someone was breaking into her home. She was able to call 911 before four men forced their way into her home, where they restrained her and the other three occupants and fled when the police arrived, taking cash with them. The other three persons present in Graziano's home during the incident each testified consistently with Graziano's account. Kris Bauhoff, a Deputy Sheriff with the Columbia County Sheriff's Office who responded to the 911 call, testified that when he arrived at the property, he observed a black male wearing a bandana inside the house, and that when he announced his presence, four individuals fled from the house and ran down a hill where they entered the SUV. Notably, Bauhoff testified that, as the vehicle sped toward him, he fired a single shot. Melanie Dale, an investigator with the State Police, testified that she pursued the SUV, at speeds of up to 80 miles per hour, and that after it left the road and became stuck in a pond, she saw two or three individuals fleeing on foot and two individuals in the pond, who were promptly arrested. While it would not have been unreasonable for the jury to acquit defendant if they credited his version of events—that he had no knowledge of the codefendants' intentions or illegal actions inside Graziano's house—when we view the evidence in a neutral light and defer to the jury's credibility determinations, we

conclude that the verdict finding that defendant engaged in the crimes of burglary in the second degree and robbery in the third degree, as an accomplice, was not against the weight of the evidence.

Defendant's argument that County Court erred when it denied his motion to dismiss the indictment lacks merit. Defendant contends that Marcus Walthour, an investigator with the State Police, changed the meaning of the statements given by three codefendants when he paraphrased them while testifying before the grand jury. In that regard, he asserts that Walthour's statement that the codefendants told him that defendant picked them up so that they could "rob a house for drugs and money" erroneously implied that defendant shared the intent to commit burglary and robbery at Graziano's residence, and further asserts that there was no other evidence of defendant's intent before the grand jury. However, inasmuch as we have found that defendant's conviction was not against the weight of the evidence, it was necessarily supported by legally sufficient evidence (*see People v Gaston*, 147 AD3d 1219, 1220 n 2 [2017]). Thus, defendant's challenge to the grand jury proceeding, which involves the sufficiency of the evidence presented to the grand jury, is precluded (*see id.*; *People v Marks*, 198 AD2d 542, 543 [1993], *lv denied* 82 NY2d 898 [1993]; *People v Bey*, 179 AD2d 905, 906-907 [1992], *lv denied* 79 NY2d 918 [1992], *lv denied upon reconsideration* 79 NY2d 1046 [1992]).

Next, we consider defendant's challenge to County Court's *Molineux* and *Sandoval* rulings. At a brief combined *Molineux/ Sandoval* hearing held immediately prior to jury selection, defendant opposed the People's request to use defendant's 2009 conviction for burglary in the third degree, under *Molineux*, as proof of defendant's intent to commit the instant crimes and, under *Sandoval*, to challenge defendant's credibility by showing that he had engaged in conduct that placed his own interests above those of society. The court found that the probative value of the conviction outweighed the prejudicial effect and, therefore, determined that the People could use the prior conviction—but not the underlying facts—for both purposes.

"The *Molineux* rule requires that evidence of a defendant's prior bad acts or crimes be excluded unless it is probative of a material issue other than criminal propensity and its probative value outweighs the risk of prejudice to the defendant" (*People v Billups*, 45 AD3d 1176, 1177 [2007] [citations omitted]). Although defendant's intent was at issue, given his defense that he was an innocent bystander who had no knowledge that the codefendants planned to rob Graziano when he drove them to

her residence, the prior conviction was of limited probative value with respect to defendant's intent because the prior conviction arose from an incident that was not similar to the charged conduct. The prior burglary did not involve a robbery, but, rather, arose from an incident during which defendant entered the residence of another with the intent to assault an occupant. Moreover, Speed's testimony, if believed, was sufficient to permit the jury to find that defendant had the requisite intent to the commit burglary and robbery. Accordingly, the evidence that defendant had committed a prior burglary would serve only to demonstrate that defendant had a propensity to commit burglary and, therefore, the court should have determined that the prior conviction was inadmissible as proof of defendant's intent (*see id.*; *see also People v Ball,* 154 AD3d 1060, 1064 [2017]).

County Court also erred in its *Sandoval* ruling. Although the crime was not too remote to be relevant and the nature of the conviction was probative of defendant's credibility, allowing the prior crime to be identified as burglary improperly suggested that defendant had a propensity to commit one of the crimes with which he was charged (*cf. People v Keener,* 152 AD3d 1073, 1074 [2017]; *People v Mould,* 143 AD3d 1186, 1188 [2016], *lv denied* 28 NY3d 1187 [2017]; *People v Henderson,* 22 AD3d 883, 884 [2005], *lv denied* 6 NY3d 776 [2006]).* We conclude, however, that the court's errors with respect to its *Molineux* and *Sandoval* rulings were harmless, because the evidence of defendant's guilt was overwhelming and there is no significant probability that defendant would have been acquitted in the absence of the errors (*see People v Sparks,* 29 NY3d 932, 935 [2017]; *People v Castillo,* 151 AD3d 1802, 1803 [2017], *lv denied* 30 NY3d 978 [2017]; *People v Yu-Jen Chang,* 92 AD3d 1132, 1135-1136 [2012]).

Defendant's contention that County Court erred by failing to instruct the jury that the testimony of accomplices must be corroborated lacks merit. The record reflects that trial counsel and defendant requested that the court not give the charge as they were concerned that referring to Speed as an "accomplice" would confuse the jury in light of the fact that defendant steadfastly claimed that he was an unwitting participant who

---

* Based on County Court's erroneous ruling, defendant determined that it was necessary to offer an explanation of the incident underlying the prior conviction during his direct testimony. The court could have permitted the People to cross-examine defendant by asking about his 2009 conviction for a class D felony without naming the crime of burglary or referring to the underlying facts (*see e.g. People v Henry,* 129 AD3d 1334, 1335 [2015], *lv denied* 26 NY3d 930 [2015]).

was unaware of the codefendants' plan to rob Graziano. Reversal is not warranted where, as here, a defendant requests that the charge on accomplice testimony not be given for strategic reasons (*see People v Hines*, 24 AD3d 964, 966 [2005], *lv denied* 6 NY3d 834 [2006]; *People v Mahan*, 195 AD2d 881, 882 [1993]).

We also reject defendant's argument that he was denied the effective assistance of counsel. Defendant failed to establish the absence of a strategic reason for counsel's decision to request that County Court not give an accomplice testimony charge (*see People v Thorpe*, 141 AD3d 927, 934-935 [2016], *lv denied* 28 NY3d 1031 [2016]). Similarly, counsel's failure to preserve defendant's legal sufficiency argument does not constitute ineffective assistance of counsel, especially in light of our determination that the conviction was not against the weight of the evidence (*see People v Place*, 152 AD3d 976, 980 [2017]; *People v Colburn*, 123 AD3d 1292, 1297 [2014], *lv denied* 25 NY3d 950 [2015]; *People v Harvey*, 96 AD3d 1098, 1100 [2012], *lv denied* 20 NY3d 933 [2012]).

We are not persuaded by defendant's argument that the sentence was harsh and excessive. First, the fact that Speed received a lesser sentence for the same crimes does not warrant reduction in defendant's sentence (*see People v Harvey*, 96 AD3d at 1101). Two additional codefendants, Smith and Alcarez, were sentenced, like defendant, to aggregate prison terms of 12 years (*People v Alcarez*, 141 AD3d 943, 944 [2016], *lv denied* 28 NY3d 1025 [2016]; *People v Smith*, 140 AD3d 1396, 1397 [2016], *lv denied* 28 NY3d 936 [2016]). Further, defendant has not taken responsibility for his actions, has a prior burglary conviction for which he was on probation at the time of the instant offense and has failed to demonstrate any extraordinary circumstances or an abuse of discretion warranting a reduction of the sentence in the interest of justice (*see People v Smith*, 140 AD3d at 1398; *People v Harvey*, 96 AD3d at 1101). Finally, as defendant concedes, his challenge to County Court's revocation of probation and resentencing on the 2009 burglary conviction lacks merit in light of our affirmance of the judgment of conviction.

Peters, P.J., Egan Jr., Lynch and Clark, JJ., concur. Ordered that the judgment is affirmed.