People v King (2018 NY Slip Op 04393)





People v King


2018 NY Slip Op 04393


Decided on June 14, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 14, 2018

107964

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
UNIQUE KING, Appellant.

Calendar Date: April 24, 2018

Before: Lynch, J.P., Devine, Mulvey, Aarons and Pritzker, JJ.


Carolyn B. George, Albany, for appellant.
Robert M. Carney, District Attorney, Schenectady (Tracey A. Brunecz of counsel), for respondent.


Devine, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Schenectady County (Murphy III, J.), rendered September 9, 2015, upon a verdict convicting defendant of the crimes of assault in the second degree, attempted assault in the second degree and criminal possession of stolen property in the fifth degree.
Defendant was indicted on charges stemming from his role in affrays at a house party in the City of Schenectady, Schenectady County and their aftermath. Following a jury trial, he was convicted of assault in the second degree, attempted assault in the second degree and criminal possession of stolen property in the fifth degree. County Court sentenced him, as a second felony offender, to an aggregate prison term of seven years to be followed by postrelease supervision of five years, and he now
appeals.[FN1]
We affirm. Defendant argues that the verdict was not supported by legally sufficient evidence but, having failed to renew his motion for a trial order of dismissal at the close of all [*2]proof, that challenge is unpreserved (see People v Williams, 156 AD3d 1224, 1225 [2017], lv denied 31 NY3d 1018 [2018]; People v Odofin, 153 AD3d 972, 974 [2017]). He also contends that the verdict was against the weight of the evidence, an analysis that requires us to evaluate whether the elements of the crimes were proven beyond a reasonable doubt (see People v Rosario, 157 AD3d 988, 989 [2018]; People v Williams, 156 AD3d at 1225). In that regard, assuming that "an acquittal would not have been unreasonable," we will "weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions . . . [to] decide[] whether the jury was justified in finding the defendant guilty" (People v Danielson, 9 NY3d 342, 348 [2007]; accord People v Kancharla, 23 NY3d 294, 303 [2014]; see People v Rosario, 157 AD3d at 989).
The area around the house descended into chaos on the night of the party, and that chaos was detailed in testimony from the two victims, Cameron Wynn and Liam Munro, as well as that of defendant and other attendees. As is relevant here, Munro testified that he was dragged down and attacked by multiple people, whom he was unable to identify, after he attempted to break up a fight involving one of his friends. Wynn was outside investigating the "ruckus" and testified to seeing Munro, a friend and former classmate, lying against the tire of a sport utility vehicle and being "viciously stomp[ed]" in the head by defendant and kicked in the body by another man. Wynn intervened and tried to pull defendant away from Munro, at which point several men attacked Wynn as well. A free-for-all ensued in which, according to Wynn, defendant repeatedly struck him in the head with a handgun and caused him to bleed profusely. These attacks caused injuries to both Munro and Wynn that were far from trivial, which both men described in detail and explained how they led to prolonged difficulties and discomfort.
Wynn realized, as he was preparing to leave the party to seek medical attention, that his cellular phone and wallet were missing. One of his friends called the phone to request its return and was rebuffed by the man who answered. The authorities were summoned after Wynn arrived at the hospital, and police, relying upon tracking information from a locator app, went to defendant's residence and found him in possession of Wynn's phone. Police further noted defendant's sport utility vehicle parked outside and observed what was later identified to be Wynn's blood on it.
It is true that Wynn's account varied somewhat over time and that Munro believed a white man — which defendant is not — was one of his attackers. Defendant also testified in his own defense and denied taking part in the fights or receiving a call demanding the return of Wynn's phone. That being said, defendant acknowledged that he was at the party with his vehicle and that he found Wynn's phone and intended to keep it. Defendant's account was further called into question by his acknowledgment that he had hatched a plot to bribe Wynn into silence, as well as the testimony of a partygoer who observed defendant fighting in the manner described by Wynn. The host of the party also testified as to his conversation with defendant in which defendant stated that he had "cracked some kid in the head pretty bad" and gotten caught because he took "a kid's cell phone" that was traced to him. The jury could readily credit the proof of defendant's involvement in the charged acts to find that he had committed assault in the second degree by pistol whipping Wynn with the realized intent of causing physical injury (see Penal Law § 120.05 [2]; see e.g. People v Romero, 147 AD3d 1490, 1491-1492 [2017], mod on rearg 148 AD3d 1726 [2017], lv denied 29 NY3d 1036 [2017]), attempted assault in the second degree by "viciously" stomping Munro in the head with the unrealized intent of causing serious physical injury (see Penal Law §§ 110.00, 120.05 [1]; People v Miller, 290 AD2d 814, 815 [2002], lv denied 98 NY2d 678 [2002]) and criminal possession of stolen property in the fifth degree by taking someone else's phone and intending to keep it for his own use despite a demand for its return (see Penal Law §§ 155.05 [2] [b]; 165.40; People v Guarino, 55 AD3d 473, [*3]474 [2008], lv denied 11 NY3d 925 [2009]). Thus, deferring to the jury's ability to view the witnesses and assess their credibility (see People v Kancharla, 23 NY3d at 303; People v Bleakley, 69 NY2d 490, 495 [1987]), we cannot say that the verdict was against the weight of the evidence.
Finally, in view of defendant's criminal record and the nature of the present offenses, we do not perceive an "abuse of discretion or extraordinary circumstances warranting a modification" of the sentences imposed (People v Taylor, 134 AD3d 1165, 1170 [2015], lv denied 26 NY3d 1150 [2016]; see People v Ferrer, 115 AD3d 1113, 1114 [2014]).
Lynch, J.P., Mulvey, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant was later resentenced on his conviction for attempted assault in the second degree. The resentencing had no impact upon the aggregate sentence, and he does not appeal from that judgment.