People v Seecoomar (2019 NY Slip Op 05727)





People v Seecoomar


2019 NY Slip Op 05727


Decided on July 18, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 18, 2019

110244

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
RAVIN SEECOOMAR, Appellant.

Calendar Date: June 6, 2019

Before: Garry, P.J., Egan Jr., Clark, Devine and Pritzker, JJ.


Samuel N. Iroegbu, Albany, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



MEMORANDUM AND ORDER
Pritzker, J.
Appeal from a judgment of the Supreme Court (Milano, J.), rendered July 21, 2016 in Schenectady County, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree (four counts), criminal possession of a controlled substance in the seventh degree and criminally using drug paraphernalia in the second degree.
Defendant was charged, in a nine-count indictment, with numerous drug crimes stemming from the sale of cocaine to a confidential informant (hereinafter CI) as part of a controlled buy operation and the subsequent execution of a search warrant, during which police found, among other things, cocaine, a scale, a large sum of money and other drug paraphernalia. Following a jury trial, defendant was found guilty of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree (four counts), criminal possession of a controlled substance in the seventh degree and criminally using drug paraphernalia in the second degree. Supreme Court thereafter sentenced defendant, as a second felony offender, to prison terms of six years followed by three years of postrelease supervision upon his convictions of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree, and to lesser concurrent prison terms for the remaining convictions. Defendant appeals, and we affirm.
Initially, County Court (Sypniewski, J.) properly denied defendant's motion for a Mapp/Dunaway hearing, "as the motion 'failed to set forth any sworn allegations of fact supporting the grounds for the application'" (People v Durfey, 170 AD3d 1331, 1336 [2019], quoting People v Gilmore, 72 AD3d 1191, 1192 [2010]; see People v Mendoza, 82 NY2d 415, 422 [1993]). The same can be said of defendant's claim that he should have been granted a Darden hearing, as his motion papers did not set forth a factual basis to warrant such a hearing (see People v Brown, 167 AD3d 1331, 1333 [2018]; People v Hamilton, 276 AD2d 715, 716 [2000], lv denied 96 NY2d 759 [2001]). As for defendant's claim that the search warrant was [*2]defective, the recording of the controlled buy established probable cause for the search warrant (see People v Crooks, 27 NY3d 609, 615 [2016]). In addition, probable cause was also supported by information from the police officers who were directly involved in the controlled buy operation and, thus, County Court properly denied defendant's motion to suppress the physical evidence (see People v Luciano, 152 AD3d 989, 992 [2017], lv denied 30 NY3d 1020 [2017]).
We are unpersuaded by defendant's contention that the verdict is against the weight of the evidence. This contention stems from an affidavit executed by the CI prior to trial that stated, among other things, that he did not purchase drugs from defendant on the day set forth in the indictment. "A weight of the evidence review requires us first to decide whether, based on all the credible evidence, a different finding would not have been unreasonable, and[,] . . . [if not], weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony. When conducting a review of the weight of the evidence, we view the evidence in a neutral light and defer to the jury's credibility assessments" (People v Nunes, 168 AD3d 1187, 1188 [2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 979 [2019]; see People v Bleakley, 69 NY2d 490, 495 [1987]).
At trial, the CI testified to the events that occurred the day he conducted the controlled buy. Specifically, he explained that he telephoned defendant asking him if he could come to his apartment later that day to purchase an "eight ball" (approximately 3.5 grams of cocaine) for $200, to which defendant replied affirmatively. The CI then detailed the specifics of the controlled buy at length, including that he was searched prior to and at the conclusion of the controlled buy and that he wore audio and video recording equipment during the operation [FN1]. Moreover, the recording of the controlled buy was played for the jury. The CI also testified that he executed an affidavit before trial in an attempt to help defendant because the two had been friends for years. The CI explained that defendant and his wife prepared the affidavit, that he signed it while at defendant's apartment and then he had it notarized by one of defendant's friends. The People questioned the CI about the affidavit, line by line, and the CI indicated which statements were correct and which were false. Notably, the CI indicated that, at the time he executed the affidavit, he believed that the date of the controlled buy, as alleged by the police, was incorrect, but that he had since learned that it was in fact correct. Although the affidavit stated that the police fabricated evidence, the CI testified that such statement was incorrect and that neither he nor the police manufactured any evidence. Ultimately, the CI testified that his in-court testimony was true and that the contents of the affidavit were largely false.
In addition, multiple police officers testified regarding the controlled buy and subsequent search of defendant's home. Luciano Savoia, a detective sergeant, and Ryan Kent, a police officer, described monitoring the controlled buy operation, explaining that the CI was equipped with various recording devices, including a GPS tracker to closely monitor the CI's movements to and from defendant's apartment. Both Savoia and Kent described their observations of the CI during the controlled buy, including Savoia's testimony that he observed the CI enter the building where defendant lived and then exit a short time later. Kent added that he searched the CI prior to the controlled buy and that, immediately after returning, the CI handed him a sandwich bag that contained a substance that was ultimately determined to be cocaine. Savoia explained that, after the controlled buy, the police department applied for and was granted a search warrant for defendant's home. Savoia also testified that, as the search [*3]warrant was being executed and while defendant was being taken into custody outside his residence, defendant was repeatedly yelling "flush it" while looking in the direction of his apartment. As such, Savoia explained that he was concerned that potential evidence may be destroyed, so he and several other police officers entered defendant's apartment. Those police officers described executing the search warrant inside the apartment, wherein they discovered, among other things, a scale, a large bag of a white powder-like substance and a folded dollar bill containing a similar white powder, which was later tested and confirmed to be cocaine.
Based upon the foregoing, a different verdict would not have been unreasonable because the jury could have entirely rejected the CI's trial testimony in light of his affidavit (see People v Pierre, 162 AD3d 1325, 1327 [2018], lv denied 32 NY3d 1007 [2018]; People v Arnold, 85 AD3d 1330, 1331-1332 [2011]). The jury, however, chose to credit the testimony of the CI and the police officers, as well as the audio and video recording of the controlled buy. Accordingly, viewing the evidence in a neutral light and according due deference to the jury's credibility determinations, we find that the verdict was not against the weight of the evidence (see People v Brown, 163 AD3d 1170, 1172 [2018]; People v Miller, 160 AD3d 1040, 1043 [2018], lv denied 32 NY3d 939 [2018]).
Defendant's argument that he was denied a fair trial because Supreme Court allowed the People to ask the CI leading questions is unpreserved for review (see People v Owens, 149 AD3d 1561, 1562 [2017], lv denied 30 NY3d 982 [2017]). Were this issue properly before us, we would find it to be without merit, as it was not an abuse of discretion for the court to allow the use of leading questions to ensure that the CI's testimony did not run afoul of the court's Ventimiglia ruling (see generally People v Martina, 48 AD3d 1271, 1272 [2008], lv denied 10 NY3d 961 [2008]; People v Cuttler, 270 AD2d 654, 655 [2000], lv denied 95 NY2d 795 [2000]).
To the extent preserved, we are unpersuaded by defendant's claim that reversal is required based upon a Rosario violation. "A Rosario violation will lead to reversal only if there is a 'reasonable possibility' that nondisclosure contributed to the verdict" (People v Auleta, 82 AD3d 1417, 1421 [2011], lv denied 17 NY3d 813 [2011], quoting People v Williams, 50 AD3d 1177, 1179 [2008]). Here, the People admit that a Rosario violation occurred because one of their police officer witnesses lost notes taken during the investigation. The People became aware of the lost notes the day before the witness was scheduled to testify, and they promptly informed Supreme Court and defense counsel of same. The People expressed that it was their understanding that the notes indicated that evidence provided to the witness had come from another police officer. Although the notes may have potentially provided impeachment evidence, their limited value is rendered immaterial given the overwhelming evidence of defendant's guilt (see People v Auleta, 82 AD3d at 1421; People v Crandall, 38 AD3d 996, 997 [2007], lv denied 9 NY3d 842 [2007]).
We are also unpersuaded by defendant's arguments that he did not receive the effective assistance of counsel. "To establish a claim of ineffective assistance of counsel, [a] defendant is required to demonstrate that he [or she] was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Lancaster, 143 AD3d 1046, 1051 [2016] [internal quotation marks and citations omitted], lv denied 28 NY3d 1147 [2017]; see People v Caban, 5 NY3d 143, 152 [2005]). "Meaningful representation simply requires that defense counsel's efforts reflect that of a reasonably competent attorney" (People v Lancaster, 143 AD3d at 1052 [internal quotation marks and citation omitted]; see People v Oathout, 21 NY3d 127, 128 [2013]). Here, defendant's assertion that counsel failed to request Mapp/Dunaway and Darden hearings and challenge the search warrant as being defective is belied by the record. Defendant's additional claims of ineffective assistance are lacking in merit as he fails to establish "an absence of a legitimate or strategic reason" for counsel's alleged shortcomings (People v Lancaster, 143 AD3d at 1052; see People v Williams, 156 AD3d 1224, 1231 [2017], lv denied 31 NY3d 1018 [2018]). Overall, it is clear from the record that counsel provided meaningful representation to defendant, including seeking a trial order of dismissal that resulted in dismissal of two counts of the indictment. Thus, we conclude that defendant was afforded meaningful representation (see People v Brown, 169 [*4]AD3d 1258, 1260 [2019], lv denied ___ NY3d ___ [May 30, 2019]; People v Wynn, 149 AD3d 1252, 1256 [2017], lv denied 29 NY3d 1136 [2017]; People v Izzo, 104 AD3d 964, 968 [2013], lv denied 21 NY3d 1005 [2013]).
Finally, defendant's assertion that Supreme Court interfered with jury deliberations is not preserved for our review as no objection was made on the record during the trial (see People v Gause, 38 AD3d 999, 1000-1001 [2007], lvs denied 9 NY3d 865 [2007]; People v Hooks, 305 AD2d 166, 167 [2003], lv denied 100 NY2d 562 [2003]). Defendant's remaining contentions have been examined and are lacking in merit.
Garry, P.J., Egan Jr., Clark and Devine, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant contends, for the first time on appeal, that the police equipping the CI with a recording device without a valid eavesdropping warrant is a violation of his Fourth Amendment rights. Inasmuch as defendant failed to raise this argument before Supreme Court, it is unpreserved for our review (see People v Schaefer, 163 AD3d 1179, 1180 [2018], lv denied 32 NY3d 1007 [2018]). Were the issue properly before us, we would find it devoid of merit (see People v Cleveland, 14 AD3d 798, 799 [2005], lv denied 4 NY3d 829 [2005]; People v Dieppa, 176 AD2d 1076, 1076 [1991], lv denied 79 NY2d 855 [1992]).