[899 NYS2d 21]

In the Matter of TATIANA N., a Person Alleged to be a Juvenile Delinquent, Appellant.

First Department, April 8, 2010

APPEARANCES OF COUNSEL

*Tamara A. Steckler, The Legal Aid Society*, New York City (*Raymond E. Rogers, Steven Banks* and *Briana Fedele* of counsel), for appellant.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Deborah A. Brenner* and *Barry P. Schwartz* of counsel), for presentment agency.

**OPINION OF THE COURT**

Saxe, J.

This juvenile delinquency proceeding arose from events that occurred at a movie theater on East 161st Street in the Bronx, in which a family was subjected to a moviegoer's worst nightmare: a group of rowdy, uncontrolled teenagers sat near them and disrupted their enjoyment of the movie, and then, having ignored or mocked requests to behave properly and been ejected from the movie theater, lay in wait for the family outside the theater in order to surround, threaten and attack them when they emerged from the theater.

On November 24, 2007, appellant Tatiana N. and her corespondent Terrence M., accompanied by a number of other youths, arrived at the theater at approximately 10:00 P.M. Complainants J.F. and R.W., along with J.F.'s 24-year-old daughter and her two-year-old son, were watching a movie that was about two thirds under way. The youths sat near the family and began making crude remarks, using their cell phones, and being

noisy and disruptive. J.F. and then R.W. asked them "to please keep the noise down." Some unpleasant remarks were offered in response, which J.F. and R.W. initially disregarded, until, after a subsequent request to keep the noise down, the group responded by becoming aggressive and cursing, saying "[t]he [h]ell with you," "[f]—you," and "[s]hut up." R.W. then left his seat to go to the lobby to complain, brushing Terrence's arm or cell phone in the process. The teenagers followed him out. J.F., concerned for R.W.'s safety, followed as well.

When the group reached the lobby, an argument ensued in front of a theater security guard. After about three minutes R.W. and J.F. were permitted to return to the movie; the teenagers were not. A few minutes after they had returned to their seats, however, one of the theater staff asked them to return to the lobby. The group of teens was still there, cursing and threatening to "kick your ass," and the guard informed R.W. that Terrence had alleged that R.W. punched him in the face. R.W. denied the charge, and he and J.F. were again permitted to return to the theater. During this interchange, Terrence looked at R.W. and pointed his left hand at R.W. in the shape of a gun.

At the end of the movie, J.F. called for a cab to pick the family up outside the theater, but they had to cross the theater parking lot to meet it. They exited the building and had begun walking across the parking lot, J.F. taking the lead in an effort to look out for the rest, when the group was surrounded from behind by the teenagers, including Terrence and Tatiana, threatening and taunting them with such remarks as "Oh, what[,] you be tough now," and "I'm going to kick your ass." J.F. gave his daughter his cell phone, telling her to call the police.

R.W. turned and headed back to the theater to seek assistance from theater security staff, and several of the teenagers, including Terrence and Tatiana, followed and attacked him, with Terrence and another teenager hitting him from behind. J.F. ran toward R.W. to assist him, and the group then focused on J.F., trying to hit him. When R.W. returned, he tried to help J.F., and both men testified that they saw Terrence swinging at J.F. with a knife in his hand. According to J.F., Terrence had also tried to punch him, but he was able to block the blow and kick Terrence in the chest. J.F. testified that he sustained injury to the area around his ribs in the process of jerking around to avoid the attack.

The teenagers regrouped, and Tatiana turned to threaten J.F.'s daughter, who was holding her two-year-old son. Tatiana

taunted, "I'm going to kick your ass, come on let's fight," and told the young woman to "put the kid in the car" so they could fight. R.W. stepped in between the two women, and Tatiana swung at R.W. and pulled his hair, her fist grazing his forehead but not causing any injury. When J.F., in turn, warned Tatiana not to hit the others, Tatiana chest-bumped him.

J.F. kept yelling that the police were on the way, and eventually the teens headed east on 161st Street. The police arrived shortly thereafter.

Based upon this testimony, which the Family Court properly accepted as credible, the adjudication against Tatiana must be affirmed. When we view the evidence, as we must, in the light most favorable to the presentment agency (see Matter of Denzel F., 44 AD3d 389 [2007]), the court's findings were sufficiently supported by the evidence. Furthermore, they were not against the weight of the evidence.

■ The charges against Tatiana fall into two categories: those for which she incurred principal liability for her own actions—attempted assault in the third degree against two individuals, third-degree menacing, and endangering the welfare of a child—and those for which she incurred accomplice liability, based upon her shared intent with Terrence for his actions—second-degree assault, second-degree menacing, third-degree assault, criminal possession of a weapon, and reckless endangerment. We are unanimous that the evidence sufficiently supports the findings against Tatiana based on her personal conduct.

■ We disagree with regard to whether the evidence supports those findings against Tatiana that are based on her accessorial liability for Terrence's use of a knife: assault in the second degree, attempted assault in the second degree, menacing in the second degree, criminal possession of a weapon, and reckless endangerment. Our colleague would vacate those findings, apparently on the ground that Tatiana neither possessed nor exercised control over the knife used by Terrence, nor importuned its use. In our view, the factual issue of whether Tatiana was aware that Terrence possessed the knife and intended that it be used during the group's attack was correctly resolved here.

Accessorial liability does not require that the person charged either possess or have control over the dangerous instrument or deadly weapon, or that she give it to the person who uses it, or even that she importunes its use aloud. While mere presence at the scene of a crime, even with knowledge that the crime is taking place, or mere association with a perpetrator of a crime, is

not enough for accessorial liability, the necessary knowledge and intent need not be admitted directly or verbally acknowledged. They may be established through the actions of the accused, based on the entire series of events. Tatiana's actions here support the inference that she was aware of her companion's possession of and intent to use the knife and that she shared the state of mind required for the commission of that offense, intentionally aiding him in such conduct and sharing a "community of purpose" with him (*see* Penal Law § 20.00; *People v Allah*, 71 NY2d 830, 832 [1988]).

Where an individual continues to participate in a criminal activity after a companion pulls out a previously concealed weapon, the factfinder may rationally conclude that the individual shared the requisite intent for the crime (*see id.*). Indeed, even the mere act of blocking a victim's path of retreat has been found to support a finding of accessorial liability (*see e.g. People v Linen*, 307 AD2d 855, 855-856 [2003], *lv denied* 1 NY3d 575 [2003]). Had Tatiana merely helped surround the family during Terrence's attack, a finding of accessorial liability would have been proper. But she did much more than that. While Terrence attacked J.F. with a knife, Tatiana was present, shouting threats and throwing her own punches, and she continued to participate in the attack on the family long past the moment when Terrence began using the knife. Tatiana's taking part in chasing, surrounding, threatening and attacking the entire party of victims, and more particularly chest-bumping J.F. in the course of threatening his daughter after Terrence had attacked with the knife, justifies the conclusion that she and Terrence were working together to menace and attack J.F. and his family, which involved the use of Terrence's knife, and that she shared in Terrence's intent to use the knife as part of the attack (*see e.g. Matter of Tiffany D.*, 29 AD3d 693 [2006]).

■ Nor is the second-degree assault finding rendered invalid by the failure to demonstrate that the use of a knife directly caused J.F.'s injuries. It was demonstrated that J.F. suffered physical injury, and his testimony supports the finding that he sustained injury from the process of struggling to avoid Terrence's attack with both knife and fist. It would be unreasonable to require that the complainant identify the particular blow he was blocking at the moment he felt a snap in his ribs as that of Terrence's knife, rather than his fist, before we permit a finding that the use of the knife was a cause of his injury.

■ The charge of reckless endangerment was also properly sustained. "A person is guilty of reckless endangerment in the

second degree when [s]he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person" (Penal Law § 120.20). "A person acts . . . recklessly when [s]he is aware of and consciously disregards a substantial and unjustifiable risk that [a] result [such as injury] will occur" (Penal Law § 15.05 [3]). Here, the evidence demonstrates that Tatiana recklessly disregarded the substantial risk that the infant could be seriously injured in the ruckus, in which a knife was being swung around in his vicinity (*see People v Saunders*, 54 AD3d 612 [2008], *lv denied* 11 NY3d 900 [2008]); notably, R.W. testified that J.F.'s two-year-old grandson was "right there" and that "at no point" was he "out of this incident."

■ Finally, we reject the suggestion, contained in a footnote in appellant's brief, that several of the offenses should have been dismissed as lesser included offenses. The lower-level offenses were not included in the petition for use in the event that one of the elements of the higher-level offenses was found to be lacking; rather, they apply to different victims or different primary actors. For example, the charge of third-degree menacing for which Tatiana was charged with principal liability was not a lesser included offense of the charge of second-degree menacing, for which she was charged with accessorial liability. Similarly, the charges of attempted third-degree assault were applicable to Tatiana's own acts against J.F. and R.W.; they were not lesser included offenses of the charges of second-degree and third-degree assault based on Terrence's actions.

Accordingly, the order of disposition of the Family Court, Bronx County (Robert R. Reed, J.), entered on or about September 11, 2008, which adjudicated appellant a juvenile delinquent upon a fact-finding determination that she committed acts that, if committed by an adult, would constitute the crimes of assault in the second and third degrees, attempted assault in the second and third degrees, menacing in the second and third degrees, criminal possession of a weapon in the fourth degree, reckless endangerment in the second degree, and endangering the welfare of a child, and placed her on probation for a period of 12 months, should be affirmed.

ANDRIAS, J.P. (dissenting in part).

Although I agree with the majority that there is legally sufficient evidence to support a finding that appellant was guilty of committing acts that, if committed by an adult, would constitute the crimes of assault in the third degree, attempted assault

in the third degree, menacing in the third degree and endangering the welfare of a child, I believe that, viewing the record in the light most favorable to the presentment agency (*see Matter of David H.*, 69 NY2d 792, 793 [1987]), the evidence is legally insufficient to support a finding that the appellant, based on accessorial liability, was guilty of committing acts that, if committed by an adult, would constitute the crimes of assault in the second degree, attempted assault in the second degree, menacing in the second degree, criminal possession of a weapon in the fourth degree and reckless endangerment in the second degree. I therefore respectfully dissent.

The Family Court found that appellant, her co-respondent, Terrence M., and four or five unidentified teenagers, in retaliation for a complaint that they had been disruptive in a movie theater, came out of the shadows in a parking lot to attack the complainant's party, which included his partner, his daughter and his two-year-old grandson. The Family Court further found that when the complainant tried to defend his party, the "evidence suggest[s] [Terrence] pulled out a knife and waived it at [the complainant]," who injured his ribs in blocking or avoiding Terrence's blows, and that this was sufficient to prove his injury was caused by the assault. As to appellant's individual conduct, the Family Court found it "despicable" that appellant approached the complainant's daughter and told her to "put the f——g kid in the car now[,] I'm going to kick your f——g ass," which compelled the complainant to intervene, whereupon appellant bumped his chest.

A person is guilty of assault in the second degree when "[w]ith intent to cause physical injury to another person, he [or she] causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.05 [2]). To prove an attempted crime, the conduct of the accused must come "dangerously near" to an act that would constitute the crime (*see* Penal Law § 110.00; *People v Acosta*, 80 NY2d 665, 670 [1993] [internal quotation marks and citation omitted]).

A person is guilty of menacing in the second degree when "[h]e or she intentionally places or attempts to place another person in reasonable fear of physical injury . . . by displaying a deadly weapon [or a] dangerous instrument" (Penal Law § 120.14 [1]). A person is guilty of criminal possession of a weapon in the fourth degree when "[h]e [or she] possesses any . . . dangerous knife . . . or any other dangerous or deadly

instrument or weapon with intent to use the same unlawfully against another" (Penal Law § 265.01 [2]).

> "To sustain a determination based upon accessorial liability, the presentment agency must prove, beyond a reasonable doubt, that the accused acted with the mental culpability necessary to commit the crimes charged and that, in furtherance thereof, she solicited, requested, commanded, importuned, or intentionally aided the principal to commit such crimes" (*Matter of Julissa R.*, 30 AD3d 526, 527 [2006], citing Penal Law § 20.00).

There is no evidence whatsoever that appellant possessed or exercised control over the knife, gave the knife to Terrence, or knew that Terrence possessed the knife and intended to use it during the attack. Neither the complainant nor his partner knew where Terrence got the knife and neither saw appellant with a knife at any point.

Nor can it be determined whether appellant ever saw the knife in Terrence's hand during the course of the attack and supported its continued use thereafter. The complainant testified that he could not see very clearly, and neither he nor his partner was able to describe the knife in detail. The complainant's partner only saw Terrence "flash[ ]" a knife, but did not see Terrence swing the knife. While the teenagers may have taunted that they would "kick your ass" at various moments during the encounter, there was no testimony that appellant or any other of the teenagers ever importuned the use of a knife.

The complainant also testified that appellant was standing to the side of Terrence at the point when the teenagers surrounded him. The complainant's partner testified that he did not see appellant hit the complainant and that the complainant was hit when he was surrounded by Terrence and "other guys." Thus, it cannot be determined on the record before us when appellant separated from Terrence and the other teenagers to confront the complainant's daughter, who was standing a number of yards away, or whether appellant was still with the group of teenagers confronting the complainant when Terrence allegedly flashed or swung the knife.

Accordingly, the foregoing counts requiring that appellant share Terrence's specific intent to possess, display or use a dangerous instrument should have been dismissed (*compare People v McLean*, 307 AD2d 586 [2003], *lv denied* 100 NY2d 643 [2003]).

The evidence was also legally insufficient to support a finding that appellant committed acts that, if committed by an adult, would constitute the crime of reckless endangerment in the second degree. "A person is guilty of reckless endangerment in the second degree when he [or she] recklessly engages in conduct which creates a substantial risk of serious injury to another person" (Penal Law § 120.20). "A person acts recklessly . . . when he [or she] is aware of and consciously disregards a substantial and unjustifiable risk that [a certain] result will occur or that [a certain] circumstance exists" (Penal Law § 15.05 [3]).

The presentment agency contends that even though appellant acted intentionally towards the complainant, his partner and his daughter, she simultaneously disregarded the substantial risk of serious physical injury to the complainant's two-year-old grandson that was created when Terrence thrust a knife in close proximity to the infant. As set forth above, there is insufficient evidence of appellant's accessorial liability with respect to Terrence's use of the knife. Further, the record demonstrates that at the time Terrence allegedly swung the knife, he was confronting the complainant, who had moved back towards the theater to aid his partner and was anywhere from a couple to 20 or 30 yards away from his daughter and grandson.

In this regard, the complainant's partner testified that the complainant had come to protect him when he was surrounded by a group of teenagers and that Terrence flashed the knife when the complainant "was more by himself." The complainant testified that Terrence was not there when the appellant confronted his daughter and that he was not aware of the group's location at that point.

This testimony amply demonstrates that the child was not in Terrence's vicinity when he allegedly displayed or swung the knife, and therefore no legally sufficient evidence exists that a risk was posed that Terrence would swing the knife at the complainant and strike the infant. Indeed, during summation, the presentment agency conceded that "the daughter took the grand child [sic] to the side and was not involved in the incident. For his safety they took the grand child [sic] to the side. Even doing this [appellant] walked to the daughter, got in her face, cursed at her to drop the child so that she can—so that they could fight."

I agree with the majority that there is legally sufficient evidence that appellant, acting in concert with Terrence and

the other teenagers, committed acts which, if committed by an adult, would constitute the crime of third-degree assault. A person is guilty of assault in the third degree when "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person" (Penal Law § 120.00 [1]). Although there is no legally sufficient evidence to connect appellant to the knife, the record shows that appellant was a member of the group of teenagers who engaged in the dispute in the movie theater, that she and the rest of the group were lying in wait for complainant's party in order to retaliate, and that punches were thrown that caused the complainant to suffer "substantial pain" and, therefore, "[p]hysical injury," in blocking or avoiding them (Penal Law § 10.00 [9]; see People v Chiddick, 8 NY3d 445, 447-448 [2007]; People v Gordon, 47 AD3d 833 [2008], lv denied 10 NY3d 811 [2008]). However, the count of attempted third-degree assault based on the attack on the complainant should have been dismissed as a lesser included offense of the third-degree assault count.

The count of attempted third-degree assault based on the attack on the complainant's partner is supported by legally sufficient evidence that appellant punched him and pulled his hair, intending to cause physical injury (see generally Matter of Myacutta A., 75 AD2d 774 [1980]).

I also agree that the evidence was legally sufficient to support the finding that appellant committed acts that, if committed by an adult, would constitute the crime of endangering the welfare of a child. A person endangers the welfare of a child when he or she "knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child" less than 17 years old (Penal Law § 260.10 [1]). Actual harm need not result. A person who physically attacks a child's caretaker in the presence of the child commits child endangerment (see e.g. People v Reyes, 284 AD2d 119, 120 [2001], lv denied 96 NY2d 923 [2001]). The record shows that the complainant's daughter was holding the two-year-old infant when appellant physically and verbally challenged her to a fight and chest-bumped the complainant.

Accordingly, I would modify to the extent of vacating the findings of assault in the second degree, attempted assault in the second degree, attempted assault in the third degree (one count), menacing in the second degree, criminal possession of a weapon in the fourth degree, and reckless endangerment in the second degree, and otherwise affirm.

SWEENY, MOSKOWITZ and ABDUS-SALAAM, JJ., concur with SAXE, J.; ANDRIAS, J.P., dissents in part in a separate opinion.

Order of disposition, Family Court, Bronx County, entered on or about September 11, 2008, affirmed.