People v James (2019 NY Slip Op 07809)





People v James


2019 NY Slip Op 07809


Decided on October 31, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 31, 2019

109075

[*1]The People of the State of New York, Respondent,
v
Kasheef James, Appellant.

Calendar Date: September 5, 2019

Before: Garry, P.J., Lynch, Mulvey and Devine, JJ.


G. Scott Walling, Slingerlands, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



Devine, J.
Appeal from a judgment of the County Court of Schenectady County (Sypniewski, J.), rendered December 14, 2016, upon a verdict convicting defendant of the crimes of manslaughter in the second degree and criminal possession of a weapon in the second degree (four counts).
As set forth in our decision relating to codefendant Maliek Lebron (People v Lebron, 166 AD3d 1069 [2018], lv denied 32 NY3d 1174 [2019]), defendant and Lebron opened fire on a group of people standing outside of a store in the City of Schenectady, Schenectady County. The victim, a bystander with whom neither defendant nor Lebron had a problem, was struck and fatally wounded. Defendant, Lebron and their wheelman, codefendant Joshua Sayles, were jointly charged in an indictment with various offenses. The trials of defendant and Lebron were severed, and Sayles entered into a plea agreement obliging him to testify against both. Defendant's trial ended with a jury convicting him of manslaughter in the second degree — charged as a lesser included offense of murder in the second degree — and four counts of criminal possession of a weapon in the second degree. County Court sentenced defendant to concurrent prison terms of 15 years and five years of postrelease supervision on each weapon possession conviction, as well as a consecutive prison term of 5 to 15 years on the manslaughter conviction. Defendant appeals.
Defendant argues that the convictions of criminal possession of a weapon in the second degree related to Lebron's pistol were not supported by legally sufficient evidence and were against the weight of the evidence. There is no question that Lebron "knowingly possesse[d] [a] loaded firearm" outside of his home or place of business and did so with the intent to unlawfully use it against another (People v McCoy, 169 AD3d 1260, 1262 [2019], lv denied 33 NY3d 1033 [2019]; see Penal Law § 265.03 [1] [b]; [3]; People v Myers, 163 AD3d 1152, 1154 [2018], lv denied 32 NY3d 1066 [2018]). As for whether defendant could be held responsible for that conduct, "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he [or she] solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct" (Penal Law § 20.00; accord People v Trappler, 173 AD3d 1334, 1335 [2019]; see People v Manini, 79 NY2d 561, 569 [1992]). "Accessorial liability does not require that [a defendant] either possess or have control over the . . . weapon, or that [he or] she give it to the person who uses it, or even that [he or] she importunes its use aloud" (Matter of Tatiana N., 73 AD3d 186, 190 [2010]). The People were instead required to prove that defendant knew that Lebron possessed the weapon and "shared the state of mind required for the commission of th[e] offense, intentionally aiding [Lebron] in such conduct and sharing a 'community of purpose' with him" (id. at 191; see People v Scott, 25 NY3d 1107, 1109-1110 [2015]; People v Allah, 71 NY2d 830, 832 [1988]; People v Junior, 119 AD3d 1228, 1229 [2014], lv denied 24 NY3d 1044 [2014]; People v Molson, 89 AD3d 1539, 1539-1540 [2011], lv denied 18 NY3d 960 [2012]).
The trial proof reflected that defendant, Lebron, Sayles and others were hanging out in the hours before the shooting and that, in the course of their conversation, Lebron was mocked for having been assaulted by several people without retaliating. Defendant left separately from the others, and it is unclear whether he knew that Lebron had obtained a handgun when he did so. That said, he vowed before he left that he would be "there for" Lebron if Lebron chose to take action. Sayles, Lebron and another friend then went for a drive in Sayles' car and surveilled a park to see if anyone Lebron had a problem with was there. Lebron thought he spotted someone and sought to call defendant, which proved unnecessary when the group ran into defendant and he joined them. Sayles testified that defendant was brought up to speed on the evening's events by Lebron, and the friend testified that they stopped by the homes of Lebron and defendant. The friend further testified that Lebron told those in the car that he needed a hoodie to avoid "mak[ing] it obvious," and defendant retrieved his own sweatshirt and gun. After driving by the park again and not seeing anyone of interest, the group passed by the market, where Lebron spotted someone and asked Sayles to stop. Sayles testified that Lebron said that he "might have to shoot at" the people in front of the store, while the friend testified that Lebron asked defendant if he was ready. Defendant and Lebron then exited the car, walked around the corner, opened fire and ran back to the car together.
In short, although defendant might not have known from the outset that Lebron had a gun and intended to use it, he later assisted in stalking potential victims, was present for actions and comments indicating that Lebron had a gun, obtained his own gun and joined Lebron in opening fire outside of the store, all of which reflects that he was aware of the true state of affairs by the time of the shooting. Under these circumstances, "the totality of the evidence permits only the conclusion that [defendant] knowingly participated and continued to participate even after his companion's intentions became clear," and that the two shared a community of purpose (People v Allah, 71 NY2d at 832; see People v Scott, 107 AD3d 1592, 1593 [2013], lv denied 22 NY3d 958 [2013]; Matter of Tatiana N., 73 AD3d at 191). Therefore, when viewed in the light most favorable to the People, the proof is legally sufficient to support the challenged portions of the verdict (see People v Allah, 71 NY2d at 831-832; People v Kearney, 39 AD3d 964, 966 [2007], lv denied 9 NY3d 846 [2007]; People v Middleton, 192 AD2d 740, 741 [1993], lv denied 83 NY2d 913 [1994]; People v Pittman, 189 AD2d 918, 918-919 [1993], lv denied 81 NY2d 891 [1993]). Defendant testified that he had no goal in mind when he retrieved his own gun, had no idea that Lebron was armed before the shooting and downplayed his own role in the gunplay. The jury chose not to believe those claims and, according deference to the credibility assessments of the jury while viewing the evidence in a neutral light, we do not find the verdict to be against the weight of the evidence (see People v Molson, 89 AD3d at 1539-1540; People v Kearney, 39 AD3d at 966; People v Pittman, 189 AD2d at 920).
Next, we perceive no error in County Court allowing the People to use, as part of their direct case, video footage of defendant engaging in a rap battle several weeks before the shooting. The footage was not prior bad act evidence that warranted a Molineux analysis (see People v Hayes, 168 AD3d 489, 489 [2019], lv denied 33 NY3d 977 [2019]). In any event, it was relevant to the issues at trial in that it showed defendant sporting the distinctive sweatshirt that other evidence reflected he wore during the shooting, indicated that he had a gun, fleshed out his connection to Lebron and others and provided background information about a feud between his associates and another group that suggested motive and intent for the shooting. County Court determined that the probative value of this information outweighed whatever prejudice arose from defendant's use of "violent and inflammatory" lyrics and references to gang activity, and ameliorated any prejudice with "an adequate limiting instruction, which the jury is presumed to have followed" (People v Wallace, 59 AD3d 1069, 1070 [2009], lv denied 12 NY3d 861 [2009]; see People v Anthony, 152 AD3d 1048, 1050-1051 [2017], lvs denied 30 NY3d 978, 981 [2017]; People v Sorrell, 108 AD3d 787, 791-792 [2013], lv denied 23 NY3d 1025 [2014]).[FN1] As such, even within the rubric of a Molineux analysis, there was no abuse of discretion in the admission of the footage into evidence.
Turning to defendant's remaining argument, we are unpersuaded that the sentences imposed were harsh or excessive. Defendant was a young man at the time of the offense and lacked a criminal record, but County Court found other factors more compelling. County Court observed that defendant had armed himself in anticipation of trouble and was a willing participant in the shooting that followed. The presentence investigation report gives no hint that defendant was sorry for his actions and, at sentencing, defendant only expressed regret for "the way things happened" and hoped that the victim's family would forgive him so that everyone could just "move on." County Court accordingly focused upon the serious nature of the offense and the need for deterrence in fashioning an appropriate sentence, and we perceive no abuse of discretion or extraordinary circumstances that would warrant its modification (see People v Hull, 125 AD3d 1099, 1101-1102 [2015], affd 27 NY3d 1056 [2016]; People v Vanderhorst, 117 AD3d 1197, 1201-1202 [2014], lv denied 24 NY3d 1089 [2014]).
Garry, P.J., Lynch and Mulvey, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Although not strictly a Molineux issue (see People v Moore, 59 AD3d 809, 811-812 [2009]), defendant also complains that the People improperly played up his propensity for violence by cross-examining him at length regarding what some of his statements in the video footage meant. County Court was concerned by this questioning, engaging in a sidebar discussion with counsel about it, eventually ordering the People to move on to a different subject and repeating the limiting instruction to the jury in its closing charge. Assuming without deciding that County Court gave the People too much latitude in pursuing this line of inquiry, the error was harmless insofar as "the evidence of defendant's guilt was overwhelming and there is no significant probability that defendant would have been acquitted in the absence of the error[]" (People v Williams, 156 AD3d 1224, 1230 [2017], lv denied 31 NY3d 1018 [2018]; see People v Sparks, 29 NY3d 932, 935 [2017]).