People v Coke (2025 NY Slip Op 01297)

People v Coke

2025 NY Slip Op 01297

Decided on March 06, 2025

Appellate Division, First Department

MANZANET-DANIELS, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 06, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels
Tanya R. Kennedy Martin Shulman John R. Higgitt Marsha D. Michael

Index No. 70/15|Appeal No. 3720-3720A|Case No. 2018-2162, 2018-2148, 2023-04374.|

[*1]People of the State of New York, Respondent,
v
Fabian Coke, Defendant-Appellant.

Defendant appeals from a judgment of the Supreme Court, Bronx County (Robert A. Neary J.), rendered September 6, 2017, convicting defendant, after a jury trial, of murder in the second degree and criminal possession of a weapon in the second degree, and imposing sentence. Defendant also appeals from an order, same court (Margaret L. Clancy, J.), entered on or about October 14, 2022, which denied his CPL 440.10 motion to vacate the judgment of conviction.

Law Office of Joel V. Rubin, P.C., New York (Joel V. Rubin, Norman Reimer and Jacob Loup of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Peter D. Coddington and T. Charles Won of counsel), for respondent.

MANZANET-DANIELS, J. 

Defendant appeals from a judgment of the Supreme Court, Bronx County (Robert A. Neary J.), rendered September 6, 2017, convicting defendant, after a jury trial, of murder in the second degree and criminal possession of a weapon in the second degree, and imposing sentence. Defendant also appeals from an order, same court (Margaret L. Clancy, J.), entered on or about October 14, 2022, which denied his CPL 440.10 motion to vacate the judgment of conviction.
Law Office of Joel V. Rubin, P.C., New York (Joel V. Rubin, Norman Reimer and Jacob Loup of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Peter D. Coddington and T. Charles Won of counsel), for respondent.
MANZANET-DANIELS, J. On this appeal, we are asked to consider whether defendant's 2017 convictions, after jury trial, of murder in the second degree and criminal possession of a weapon in the second degree for the 2014 shooting death of Dune Jacobs were supported by legally sufficient evidence, and whether the verdict was against the weight of the evidence. We hold that the evidence presented to the jury was legally insufficient to prove that defendant committed the shooting or acted in furtherance of the shooting's commission. Alternatively, we hold that, even if the verdict was based on legally sufficient evidence, it was against the weight of the evidence and the jury was unjustified in finding defendant guilty of the charged offenses. We therefore reverse the judgment of conviction and dismiss the indictment.
BACKGROUND
Under indictment No. 70/15, defendant, Brendrick Brown, and Davon Jenkins were charged with acting in concert to commit murder in the second degree, first-degree manslaughter, and second-degree criminal possession of a weapon, based upon the following facts.[FN1]
At approximately 1:00 a.m. on December 2, 2014, police officers responded to a report of shots fired at East 213th Street and Carlisle Place in the Bronx. Upon arrival, they found a woman, who they later learned was the victim, Dune Jacobs, nonresponsive and lying on the sidewalk on 213th Street with gunshot wounds to the head and left foot. Ms. Jacobs was transported to Jacobi Hospital where she succumbed to her injuries shortly thereafter.
Moments before Ms. Jacobs was discovered, Sergeant Thomas Casey and his partner, Officer Whelan, also responded to the vicinity of the location because they heard what they believed to be shots fired while patrolling a nearby location. They responded in their unmarked police vehicle to 213th Street, where they saw a white Nissan Altima traveling slowly before turning onto Carlisle Place. The officers observed three men in the Nissan, including a driver, front seat passenger, and a back seat passenger sitting behind the front seat passenger. The officers followed the vehicle before the driver suddenly sped away at a high rate of speed. Casey and Whelan pursued the vehicle in a high-speed chase, but temporarily lost sight of the vehicle. About one to [*2]two minutes after the chase began, the officers found the abandoned Nissan with no occupants and still running in a crosswalk approximately a mile or two from the crime scene.
Police recovered store receipts from the night prior (December 1, 2014) in the vehicle and used those receipts to obtain surveillance footage from those stores as part of their investigation. Police focused on the footage from a liquor store and Sunoco gas station for which the receipts referenced purchases made the evening leading up to the early morning shooting. Footage from the liquor store shows a man (who the People contend is the defendant) in a black hoodie with distinctive white lettering, shop for and purchase alcohol alongside a male individual the People contend was codefendant Jenkins at approximately 9:15 p.m.[FN2] Video from the Sunoco gas station convenience store shows the same hooded man, Jenkins, and a third person the People contend was Brown enter and leave together, at approximately 11:00 p.m., about two hours before the shooting. Significantly, none of the surveillance footage shows defendant in, entering, or exiting the Nissan. Nor was there any direct testimony which placed the defendant in the Nissan. The People presented no evidence regarding defendant's whereabouts during the period between the Sunoco video footage, at approximately 11:00 p.m., and the shooting at approximately 1:00 a.m.
Police recovered two cell phones from the Nissan, one from the driver's side door and another from the area between the front passenger's seat and center console. The police never analyzed the contents of these phones. The police also recovered several unopened bottles of alcohol which were not dusted for fingerprints or preserved, and only one of the bottles matched those purchased on the liquor store video.[FN3]
Neither defendant's fingerprints nor DNA were recovered from the vehicle. By contrast, Jenkins' fingerprints were recovered from the driver's side door and the door's interior window frame, and Brown's were found on the exterior of the front passenger door and his palm print was found on the interior of the rear passenger door. A fingerprint belonging to an uncharged individual was recovered from one of the phones recovered from the vehicle.
Police recovered three shell casings and two bullet fragments from the crime scene. They also recovered a loaded Glock pistol, with a round in the chamber, on the street next to the curb on 213th Street near its intersection with Paulding Avenue, which was on the car chase route. Ballistics testing matched the casings with the Glock but were inconclusive as to the bullet fragments recovered from Ms. Jacobs' postmortem.
The People's case at trial heavily relied upon the DNA testing performed on the Glock. Kendra Hardy, an Office of the Chief Medical Examiner (OCME) criminalist, testified that the OCME received swabs from the Glock, but that only those taken from the gun slide — the mechanism on top of the gun which [*3]must be manually pulled back and released to prime the gun for firing — had sufficient DNA for testing. The gun-slide swab contained a mixture of DNA from at least three individuals, which were compared to DNA samples taken from a green plastic soda bottle purportedly used by defendant. The comparison concluded that defendant could not be excluded as a contributor. Hardy assessed that the mixture was approximately 162 billion times more likely to have originated from the bottle donor and two unknown individuals versus three unknown individuals.[FN4] This ratio was calculated using an OCME "forensic statistical tool' (FST) to assess the probability that the mixture included defendant's DNA versus three entirely unknown contributors. Hardy testified that the FST test concluded that defendant, within the 162 billion to one probability, could not be excluded as a contributor of the DNA found on the gun slide. Hardy also conceded that a follow-up buccal swab comparison would have confirmed whether the defendant was indeed a contributor to the DNA mixture recovered from the firearm. However, a sample was never obtained, and the People never sought to compel a sample.
Hardy further testified that the concentration of DNA left behind on an object could be influenced by the frequency and duration of the contact between the contributor and the object. Crucially, she testified that it was impossible to determine when the DNA was transferred to the gun, or which part of the body it came from. She also said it was not possible to rule out that defendant had not touched the gun, but that the DNA ended up on the slide through "secondary transference" (i.e., where the defendant's DNA is transferred to an object or person who subsequently contacted and transferred defendant's DNA to the slide). Notwithstanding these limitations, the People relied heavily on the DNA evidence to link defendant to the gun and the shooting.
The People also relied on the 911 caller's statement that "they" were shooting at him to show that there were multiple individuals (including defendant) involved in the shooting. The caller, however, immediately clarified that the shots weren't fired near him, and did not see who or how many individuals were involved, and he did not say that he saw anyone whom he could identify as the shooter or an accomplice.
Defendant did not present any evidence. The jury convicted defendant of murder in the second degree and criminal possession of a weapon in the second degree but acquitted him of manslaughter in the first degree. On September 6, 2017, the court sentenced defendant, as a second felony offender, to an aggregate prison term of 25 years to life. Defendant remains incarcerated.
DISCUSSION Defendant contends that the evidence was legally insufficient to prove that he shot Ms. Jacobs or that he was even present at the crime scene. Alternatively, he argues that the verdict was also against the weight of the evidence. As a preliminary matter, the [*4]People concede that defendant's claim that the evidence of his intent was legally insufficient is preserved. Defendant's claim that the evidence was insufficient to prove his presence at the crime scene is unpreserved, however, because he failed to raise it in support of his motion to dismiss (see People v Hawkins, 11 NY3d 484, 492 [2008]). Nevertheless, given the magnitude of defendant's convictions and the severity of his sentence, we review this claim in the interest of justice.
The People's evidence was legally insufficient to establish defendant's intent or his presence at the crime scene.
"A verdict is legally sufficient when, viewing the facts in the light most favorable to the prosecution, there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Denson, 26 NY3d 179, 188 [2015] [internal quotation marks omitted]). In a circumstantial evidence case, this Court "must decide whether a jury could rationally have excluded innocent explanations of the evidence offered by the defendant and found each element of the crime proved beyond a reasonable doubt" (People v Reed, 22 NY3d 530, 535 [2014]).
To prove defendant's guilt of murder in the second degree, the People were required to prove that "[w]ith intent to cause the death of another person, he cause[d] the death of such person or of a third person" (Penal Law § 125.25[1]). To prove defendant's guilt of criminal possession of a weapon in the second degree, the People were required to prove that he "possessed a loaded firearm" with "intent to use the same unlawfully against another" (Penal Law § 265.03[1][b]).
The People charged defendant with acting in concert with Jenkins and Brown in the commission of these crimes. Accessorial liability "may be established through the actions of the accused, based on the entire series of events," and "does not require that the person charged either possess or have control over the dangerous instrument or deadly weapon, or that [he or] she [gave] it to the person who uses it, or even that [he or] she importunes its use aloud" (Matter of Tatiana N., 73 AD3d 186, 190-191 [1st Dept 2010]). However, "mere presence at the scene of a crime, even with knowledge that the crime is taking place, or mere association with a perpetrator of a crime, is not enough for accessorial liability" (id.).
This is a circumstantial case. There is no eyewitness proof that defendant committed, was present at, or facilitated the shooting. The People's case relies upon the presence of defendant's DNA on the gun slide, the videos purportedly showing defendant with Jenkins and Brown in the hours before the shooting, the liquor bottles in the car, and the ballistics and medical evidence to establish defendant's accessorial liability for the murder and weapon possession to connect defendant to the crime. We hold that this purely circumstantial evidence is insufficient [*5]to infer that the elements of the charged crimes were proven beyond a reasonable doubt.
First, there no evidence from which to infer that defendant had the intent to commit, or aid Jenkins or Brown in furtherance of, the shooting. The People's case depends almost entirely upon the DNA evidence, from which the People infer that defendant racked the Glock used to kill Ms. Jacobs. The DNA evidence, however, is highly equivocal and does not reasonably permit such an inference.[FN5] Critically, the OCME criminalist Hardy testified that it was impossible to determine when each contributor left DNA on the gun; how defendant's DNA was transferred to the gun; or, more importantly, whether defendant even touched the gun. Without additional evidence that defendant possessed the gun during or took any actions to aid Jenkins or Brown in the shooting, any conclusion that defendant possessed the gun or committed or aided in the shooting is based entirely on conjecture.
There is no such corroborating evidence. This case contains no physical, video, or testimonial proof regarding any act defendant took in furtherance of possessing the gun or shooting Ms. Jacobs. Even assuming arguendo defendant's presence with Jenkins and Brown nearly two hours before the shooting, such does not lead to a permissible inference that he shot Ms. Jacobs or possessed the gun in furtherance of the crime that evening. This case stands in stark contrast to the cases relied upon by the People, which featured eyewitness testimony as to those defendants' homicidal intent (see People v Williams, 123 AD3d 527, 528 [1st Dept 2014], lv denied 25 NY3d 1209 [2015] [defendant's homicidal intent based on eyewitness testimony that he handed an already-racked weapon to his accomplice]; see also People v Scott, 25 NY3d 1107, 1109-1110 [2015] [defendant convicted of first-degree manslaughter along with two others in the same car where he got out of car, broke a bottle over the victim's head, and chased victim's brother down the block as an accomplice beat the victim to death with a baseball bat]). Here, no "agreement to kill," "purpose to kill," or "expressed intent to kill can be gleaned from the evidence" (People v Cummings, 131 AD2d 865, 867 [2d Dept 1987]).
Further, there is no legally sufficient evidence proving that defendant was present at the crime scene. Again, assuming that defendant was with Jenkins and Brown hours prior to the shooting does not permit any reasonable inference that he was with them at the crime scene. There is no evidence that defendant ever entered the Nissan. Nor was there evidence that he was present in the Nissan at the time of the chase. While police recovered from the Nissan fingerprints of Jenkins, Brown, and that of a third unidentified back seat passenger, they did not recover defendant's prints. Additionally, the liquor bottles with which the People attempt to tie defendant to the car do not match those defendant purchased at the liquor store, and the bottles were [*6]never tested for defendant's fingerprints or DNA.
The proffered 911 call is, likewise, not probative as it in no way establishes defendant's presence at the scene. It is undisputed that the caller did not report seeing anyone at the time of the shooting.
The People's argument that the ballistics evidence shows that Ms. Jacobs turned her head to the left while being shot from the right, thereby establishing the presence of two people at the shooting, is entirely speculative. The People's own witness, the medical examiner, testified that it was "almost impossible to tell where a person was standing and where the . . . muzzle of the gun was with relationship to where they are standing because the head can turn in any number of directions."
Finally, the People presented no evidence as to the motive behind the shooting, or to any connection at all between defendant or Ms. Jacobs. While "motive is not an element of murder" (People v Caban, 5 NY3d 143, 154 [2005]),the lack of evidence of motive speaks to the weakness of the People's case, particularly as to the intent element of both charges.
For these reasons, we find that the evidence presented did not establish a valid line of reasoning and permissible inferences from which a rational jury could have found that defendant possessed the Glock or the intent to kill Ms. Jacobs, whether as a primary actor or as an accomplice. For these reasons, both of defendant's convictions should be reversed and the indictment dismissed.
Even assuming the evidence was legally sufficient as to defendant's charges, the verdict was against the weight of the evidence.
Alternatively, if the evidence is legally sufficient but "an acquittal would not have been unreasonable," the court must "weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" (People v Danielson, 9 NY3d 342, 348 [2007]). "Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty" (id.). In a circumstantial evidence case, this Court "must satisfy itself that the inference of guilt is the only one that can be fairly and reasonably drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence" (People v Baque, — NY3d &mdash, 2024 NY Slip Op 05244 * 2 - 3 [2024] [internal quotation omitted]).
For the myriad of reasons stated in section (a), we do not find that the inference of defendant's guilt is the only one that can fairly and reasonably be drawn from the facts. The DNA evidence was not conclusive as to whether defendant ever touched the gun, and if so, when, and there was no additional circumstantial evidence linking defendant to the gun or the crime scene.
CONCLUSION Accordingly, the judgment of the Supreme Court, Bronx County (Robert A. Neary J.), rendered September 6, 2017, convicting defendant, after a jury trial, of murder in [*7]the second degree and criminal possession of a weapon in the second degree, and sentencing him, as a second felony offender, to an aggregate prison term of 25 years to life, should be reversed, on the law, and the indictment dismissed.
The appeal from the order, same court (Margaret L. Clancy, J.), entered on or about October 14, 2022, which denied defendant's CPL 440.10 motion to vacate the judgment of conviction, should be dismissed, as academic.
Judgment, Supreme Court, Bronx County (Robert A. Neary J.), rendered September 6, 2017, reversed, on the law, the conviction vacated, and the indictment dismissed. Appeal from the order, same court (Margaret L. Clancy, J.), entered on or about October 14, 2022, dismissed, as academic.
Opinion by Manzanet-Daniels, J.P. All concur.
Manzanet-Daniels, J.P., Kennedy, Shulman, Higgitt, Michael, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 6, 2025

Footnotes

Footnote 1: Defendant and Brown were jointly tried; Brown was acquitted of all counts. After a separate jury trial, Jenkins was found guilty of second-degree murder and second-degree weapon possession; this Court affirmed Jenkins' conviction (People v Jenkins, 198 AD3d 488 [1st Dept 2021], lv denied 37 NY3d 1146 [2021]).

Footnote 2: Defendant never conceded that he was the hooded individual in the video; at summation, defense counsel did not argue that defendant was not the hooded individual in the video but asked the jury to draw their own conclusion as to the man's identity.

Footnote 3: Specifically, defendant argues that the "[liquor store] video shows the men buying one bright green box, apparently Patron tequila; a small clear bottle; and two dark boxes with large gold lettering reading 'MOET.' But the photos of the car only show one Moet box, a black box with a crest that is clearly distinct from the liquor store purchases, and neither the green box nor the clear bottle." 

Footnote 4: The same test was performed on a cigarette butt taken from Jenkins, and concluded that Jenkins could be excluded as a contributor. There was no evidence presented that Brown's DNA was compared to the swab. 

Footnote 5: We note that the FST method of DNA analysis had been successfully excluded after a Frye hearing in People v Collins, 49 Misc 3d 595, 629 (Sup Ct, Kings County 2015) and that the OCME has since discontinued its use. This fact is not dispositive of our holding in this case but further enforces the weakness of the DNA evidence presented by the People. This conclusion should not be read as a statement that all guilty verdicts obtained by FST evidence are flawed; here, the FST evidence was insufficient alone to support a guilty verdict given the complete lack of corroborative evidence.