People v Bostic (2025 NY Slip Op 01816)

People v Bostic

2025 NY Slip Op 01816

Decided on March 26, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 26, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
PAUL WOOTEN
BARRY E. WARHIT
PHILLIP HOM, JJ.

2014-00573
 (Ind. No. 2224/10)

[*1]The People of the State of New York, respondent,
v
Dexter Bostic, appellant.

Twyla Carter, New York, NY (Arthur H. Hopkirk of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Nancy Fitzpatrick Talcott, Mariana Zelig, and Corey Reisman of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Gregory L. Lasak, J.), rendered January 15, 2014, convicting him of attempted murder in the second degree, assault in the first degree (two counts), robbery in the first degree (two counts), and criminal possession of a weapon in the second degree (two counts), upon a jury verdict, and imposing sentence.
ORDERED that the judgment is modified, on the law, by vacating the convictions of assault in the first degree under count 3 of the indictment and criminal possession of a weapon in the second degree under count 9 of the indictment, vacating the sentences imposed thereon, and dismissing those counts of the indictment; as so modified, the judgment is affirmed.
Following a jury trial, the defendant was convicted of one count of attempted murder in the second degree, two counts of assault in the first degree, two counts of robbery in the first degree, and two counts of criminal possession of a weapon in the second degree, arising from a robbery and shooting that took place in Queens on July 8, 2007.
At trial, testimony was elicited that Krystal Henry, for purposes of engaging in prostitution, entered a Porsche operated by Robert Ellis. Henry testified that as they drove, Ellis displayed a gray or silver firearm to her. Henry indicated that the firearm displayed by Ellis appeared to be the same firearm depicted in a photograph of the firearm used during the shooting, a .45 caliber semi-automatic pistol. According to Henry, she and Ellis were subsequently joined by Ellis' roommate, the defendant, and while they drove, the defendant displayed a different firearm to her, a black firearm with a "nozzle on the end." Henry indicated that the black firearm displayed to her by the defendant appeared to be the same firearm depicted in a photograph of a firearm recovered the day after the shooting, an Intratec 9 millimeter semi-automatic pistol (hereinafter the Intratec firearm). Henry stated that she was dropped off near the location of the shooting, which she did not witness.
Carl Field testified that at approximately 4:50 a.m. on July 8, 2007, he was standing outside when a Porsche pulled up, and the defendant got out of the vehicle and fired several shots in his direction, striking him in the left leg. Field indicated that after he fell to the ground, the [*2]defendant stole various items from him, and then got back into the vehicle and drove away.
Further, testimony was elicited that at approximately 2:17 a.m. on July 9, 2007, a police officer on patrol in Brooklyn attempted to stop a BMW operating with a license plate belonging to a different vehicle, and the BMW drove away at a high rate of speed. As captured by security footage from a building in the vicinity, the BMW then drove the wrong way down a one-way street at approximately 2:30 a.m., followed by three individuals getting out of the BMW and running away. Thereafter, during a police search of the surrounding area where the BMW had been left, a detective recovered both the Intratec firearm and the firearm used during the shooting from inside a plastic bag in a garage. At that time, the Intratec firearm was loaded with 25 rounds of ammunition, and the firearm used during the shooting was not loaded. Testing revealed the presence of the defendant's DNA on both the Intratec firearm and the firearm used during the shooting. The defendant was subsequently apprehended and arrested on July 11, 2007.
Initially, as the People correctly concede, the counts of assault in the first degree under count 3 of the indictment (Penal Law § 120.10 [4]) and robbery in the first degree under count 4 of the indictment (id. § 160.15[1]) were multiplicitous (see People v Alonzo, 16 NY3d 267, 269; People v Lopes, 204 AD3d 699, 700). Accordingly, we vacate the defendant's conviction of assault in the first degree under count 3 of the indictment, vacate the sentence imposed thereon, and dismiss that count of the indictment.
Furthermore, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally insufficient to establish, beyond a reasonable doubt, the defendant's guilt of criminal possession of a weapon in the second degree as charged under count 9 of the indictment, which pertained to the Intratec firearm. A person is guilty of criminal possession of a weapon in the second degree when, inter alia, with intent to use the same unlawfully against another, such person possesses a loaded firearm (see Penal Law § 265.03[1][b]). Here, the evidence presented by the People, including Henry's testimony, was legally sufficient to establish that the defendant possessed the Intratec firearm in Queens on July 8, 2007. However, the People did not present any evidence that the Intratec firearm was loaded at the time that it was in the defendant's possession in Queens on July 8, 2007, as charged under count 9 of the indictment (see People v Santiago, 195 AD3d 1460). Rather, the People merely presented evidence that the Intratec firearm was loaded at the time that it was found by the police in a garage in Brooklyn approximately one day later on July 9, 2007. Under these circumstances, the evidence was legally insufficient to establish, beyond a reasonable doubt, the defendant's guilt of criminal possession of a weapon in the second degree as charged under count 9 of the indictment (see People v McFadden, 94 AD3d 1150, 1151). Accordingly, the defendant's conviction of criminal possession of a weapon in the second degree under count 9 of the indictment and the sentence imposed thereon must be vacated, and count 9 of the indictment must be dismissed. In light of our determination that the verdict of guilt of criminal possession of a weapon in the second degree under count 9 of the indictment was not supported by legally sufficient evidence, we need not consider the defendant's contention that the verdict as to that count is against the weight of the evidence (see People v Acevedo, 187 AD3d 1030, 1033).
The defendant's contention that the Supreme Court violated his Sixth Amendment right to confrontation by admitting into evidence records of a DNA analysis performed by the Office of the Chief Medical Examiner of the City of New York is unpreserved for appellate review, since defense counsel did not object to the admission of either the records or the accompanying testimony from a supervising criminalist on the basis that their admission violated the Confrontation Clause (see CPL 470.05[2]; People v Espinosa, 207 AD3d 655, 656; People v Kinard, 187 AD3d 936). In any event, while the admission of a nontestifying analyst's DNA report violated the defendant's Confrontation Clause rights (see People v Cartagena, 126 AD3d 913, 914; People v Gonzalez, 120 AD3d 832, 833), that error was harmless beyond a reasonable doubt (see People v Martinez, 165 AD3d 1288, 1289; People v Cartagena, 126 AD3d at 914). The testimony of the supervising criminalist that she performed her own independent analysis and reached her own conclusions demonstrated that she was not functioning merely as "a conduit for the conclusions of others" (People v Austin, 30 NY3d 98, 105 [internal quotation marks omitted]; see People v Lebron, 171 [*3]AD3d 1092, 1093). Thus, the erroneously admitted report was cumulative, as the supervising criminalist reached the same conclusions after analyzing the raw data (see People v Rawlins, 10 NY3d 136, 156; People v Martinez, 165 AD3d at 1289; People v Gonzalez, 120 AD3d at 833).
Contrary to the defendant's contention, the Supreme Court properly denied his request to charge the jury that a prosecution witness, Henry, was an accomplice whose testimony required corroboration. "Where differing inferences may reasonably be drawn as to whether a witness participated in the offenses, an accomplice-in-fact instruction must be given" (People v Dotsenko, 150 AD3d 1146, 1146-1147). However, a person's "'mere presence at the scene of a crime, even with knowledge that the crime is taking place, or mere association with a perpetrator of a crime, is not enough for accessorial liability'" (People v Lopez, 137 AD3d 1166, 1167, quoting Matter of Tatiana N., 73 AD3d 186, 190-191). Here, no evidence was elicited from which it could be reasonably inferred that Henry was a participant in the subject crimes (see People v Tucker, 72 NY2d 849, 850; People v Dotsenko, 150 AD3d at 1147; People v Pelsey, 60 AD3d 1088).
The defendant's contention that the Supreme Court, in response to a jury note requesting to see all video evidence, improperly failed to direct that the videos be shown to the jurors in the jury deliberation room, rather than in the courtroom, is unpreserved for appellate review (see CPL 470.05[2]; People v McGuire, 196 AD3d 1155). In any event, the defendant's contention is without merit (see CPL 310.20[1]; People v Grant, 127 AD3d 990, 991).
Further, the defendant's contention that he was improperly deprived of his right to be present at all material stages of the trial due to his exclusion from a sidebar conference is without merit. A defendant's presence at the trial is required "'only where his [or her] absence would have a substantial effect on his [or her] ability to defend'" (People v Robinson, 203 AD2d 491, 492, quoting People v Mullen, 44 NY2d 1, 5). Here, the record demonstrates that the sidebar conference at issue did not involve "'factual matters about which the defendant might have peculiar knowledge that would be useful in advancing the defendant's or countering the People's position'" (People v White, 41 AD3d 621, 622 [alteration omitted], quoting People v Dokes, 79 NY2d 656, 660), and that there was no "'potential for the defendant to meaningfully participate in the subject discussions'" (People v Crowe, 167 AD3d 1036, 1037, quoting People v Fabricio, 3 NY3d 402, 406; see People v Page, 240 AD2d 765, 766).
The defendant's remaining contentions are without merit.
DUFFY, J.P., WOOTEN, WARHIT and HOM, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court